JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-6809
    Facsimile: (415) 436-7234
    E-Mail: wendy.thomas@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0626 MAG |
| Plaintiff, ) | |
| v. ) | UNITED STATES' SENTENCING MEMORANDUM |
| WILLIAM W. PALACE, III, ) | Hearing:     June 20, 2008 |
| Defendants. ) | Time:         9:30 a.m. |
| ) | Courtroom: Hon. Nandor J. Vadas |

## I. INTRODUCTION

On December 28, 2007, defendant William W. Palace, III, pled guilty to one count of Driving While Under the Influence of Alcohol, in violation of 36 C.F.R. § 1004.23(a)(1). This Court has set June 20, 2008, at 9:30 a.m., as the date for judgment and sentencing. The government submits the following sentencing memorandum in order to advise the Court of the government's sentencing recommendation.

## II. BACKGROUND

A.    <u>Defendant's Offense Conduct</u>

On August 19, 2007, at approximately 1:05 a.m, United States Park Police Officer April Ramos ("Officer Ramos") observed a white Oldsmobile enter the Presidio at the 15th Avenue gate at a high rate of speed. The vehicle traveled northbound on 15th Avenue toward 1801 Wedemeyer Street before turning onto Wedemeyer St. When making the turn, the driver failed

1  to stop at the posted stop sign.  The vehicle continued northbound on Battery Caulfield before
2  turning left into the parking lot across the street from 1801 Wedemeyer.  The vehicle turned
3  around in the parking lot and then left traveling southbound on Wedemeyer/Battery Caulfield
4  toward 15th Avenue, eventually turning right onto 15th Avenue.  Officer Ramos stopped the
5  vehicle at the corner of 15th Avenue and Lake.

6  Officer Ramos approached the vehicle and identified the driver as William W. Palace, III.
7  As Mr. Palace spoke, Officer Ramos noticed a strong odor of alcoholic beverages coming from
8  him.  In addition, Officer Ramos noticed that Mr. Palace slurred his speech and had watery eyes.
9  Officer Ramos informed Mr. Palace that she stopped him because he failed to stop at a stop sign
10 and because he was driving at a high rate of speed.  Mr. Palace stated that he was lost and was
11 looking for Lombard St.

12 Officer Ramos then asked Mr. Palace whether he had been drinking.  Mr. Palace
13 responded that he had not been drinking and that he does not drink alcohol.  After Officer Ramos
14 informed Mr. Palace that she smelled alcohol emanating from him, Mr. Palace continued to deny
15 that he had consumed alcohol.  Mr. Palace agreed to submit to Field Sobriety Tests.  Officer
16 Ramos then performed the following FSTs: Horizontal Gaze Nystagmus, One Leg Stand, and
17 Walk and Turn.  Based on his performance of those tests, Officer Ramos decided to conduct a
18 Preliminary Alcohol Screening ("PAS") test.  She read the defendant the PAS Admonition and at
19 approximately 1:15 a.m., Mr. Palace blew a B.A.C. of .142.  At approximately 1:17 a.m., Officer
20 Ramos administered a second test.  Mr. Palace blew a B.A.C. of .129.

21 Officer Ramos then handcuffed Mr. Palace.  Before Officer Ramos began reading Mr.
22 Palace his Miranda Rights, Mr. Palace stated, "I have had a little to drink tonight, I had a DUI
23 when I was 16 years old."  Mr. Palace then stated that it was Saturday night, he likes to go out
24 and have drinks, and he had probably had four drinks.  Officer Ramos stopped Mr. Palace and
25 read him his Miranda Rights.  The defendant subsequently submitted to a phlebotomy test back
26 at the Police Station, which resulted in a blood alcohol content of .13%.
27 //
28 //

SENTENCING MEMORANDUM
CR 07-0626 MAG                        2

## III. GUIDELINES CALCULATIONS

As the crime in this case is a Class B Misdemeanor, the Sentencing Guidelines do not apply. U.S.S.G. § 1B1.9. Though the Court does not have to consider the Sentencing Guidelines, the Court still must consider the following factors under 18 U.S.C. § 3553(a):

1. "the nature and circumstances of the offense and the history and characteristics of the defendant";
2. "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; to deter; "to protect the public . . ."; and to provide rehabilitation;
3. "the kinds of sentences available";
4. "the need to avoid unwarranted sentence disparities among defendants . .";
5. "the need to provide restitution to any victims of the offense."

The United States Probation Office has recommended a sentence of three years probation with six days of intermittent confinement. The government believes this is an appropriate sentence and concurs with U.S. Probation's recommendation.

## IV. ARGUMENT

A. <u>Sentencing Factors to Consider Under 18 U.S.C. § 3553(a).</u>

In light of the *Booker* Court's severance of 18 U.S.C. § 3553(b)(1) from the federal sentencing statute, sentencing courts are obliged to consider the factors set forth in § 3553(a), including the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and avoid sentencing disparities among similarly situated defendants. Under 18 U.S.C. § 3553(a), the sentencing court must consider the following factors in addition to the sentence specified by the Guidelines:

1. "the nature and circumstances of the offense and the history and characteristics of the defendant";

This is a serious offense and one that the defendant should not develop a pattern of engaging in this early in his life. Palace is "fortunate that he has not ended one of his intoxicated

escapades facing a sentence for manslaughter or second degree murder." United States v. Gibson, 896 F.2d 206 (6th Cir. 1990).  Here, the defendant has one prior conviction for the conduct at issue in this case, driving while under the influence of alcohol.  The defendant was convicted of Drunk Driving in June of 2004 in Chatsworth, California. (PSR ¶ 11).  In that case, the defendant received a sentence of three years of probation.  At the time of his first DUI conviction, he was seventeen years old.  In order to reflect that this is a second time offense, intermittent custody or some time in home detention is appropriate.

    2.    "The need for the sentence imposed . . . to promote respect for the law[] and to provide punishment for the offense"; to deter; "to protect the public . . ."; and to provide rehabilitation"

The sentencing recommendation contained in the plea agreement filed in this case originally included only two weekends in custody.  However, following the defendant's guilty plea on December 28, 2007, United States Pretrial Services Officer Timothy Elder filed a memorandum reflecting the fact that the defendant was cited on May 9, 2008, for driving on a suspended license.  He currently has a court date of June 26, 2008.  The court should take into consideration the defendant's post-conviction conduct in rendering its sentence.  Here, the defendant's decision to operate a motor vehicle while his license was suspended, while he was awaiting sentence on a criminal case, reflects disregard for the law and a substantial lapse in judgment on the defendant's part.

    3.    "The kinds of sentences available"

The government agrees with the United States Probation Officer's assessment that the maximum term of imprisonment allowable is six months per count and the maximum period of probation allowable is five years per count.  36 C.F.R. § 1001.3; 18 U.S.C. § 3561(c)(2).  Under U.S.S.G. § 1B1.9, the sentencing guidelines do not apply to Class B and C misdemeanors.

    i.    The Court may impose custody as a condition of probation.

Title 18 of the United States Code Section 3563 provides that the Court may impose a variety of conditions of probation.  One condition of probation that the Court may impose is that the defendant "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment

SENTENCING MEMORANDUM
CR 07-0626 MAG    4

authorized for the offense, during the first year of the term of probation.." 18 U.S.C. § 3563(b)(10). Here the recommended sentence of six days (three weekends) in custody as a condition of probation is less the term authorized by the offense, which is six months.

   ii.  Alternatives to Intermittent Custody

The court has many other conditions of probation it may impose under 18 U.S.C. § 3563(b). Other than intermittent incarceration (under (b)(10)), the court can impose time in a "halfway house" under (b)(11) or medical treatment for alcohol dependency under (b)(9). While these are possible alternatives, the government thinks that intermittent confinement is optimal. Since the defendant is employed as a bank teller during the week, intermittent confinement will allow the defendant to go to work during the week and still complete his time in custody.

## V. CONCLUSION

For the reasons set forth above, the government recommends that this Court sentence the defendants to three years of probation, three weekends in custody, a $750 fine, successful completion of a Second Time DUI program, completion of an approved substance abuse assessment and treatment as deemed necessary by U.S. Probation, and the $10 special assessment fee.

DATED: June 13, 2008        Respectfully submitted,

                  JOSEPH P. RUSSONIELLO
                  United States Attorney

                    /s/
                  WENDY THOMAS
                  Special Assistant United States Attorney